THE STATE OF OHIO, APPELLANT, *v.* VEGA, APPELLEE.

[Cite as State *v.* Vega (1984), 12 Ohio St. 3d 185.]

(No. 83-1933—Decided July 25, 1984.)

Mr. *Stewart C. Piotter,* for appellant.
Mr. *Leslie R. Early,* for appellee.

*Per Curiam.* The issue presented is whether an accused may use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath testing machines in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health. This court, for the reasons that follow, reverses the decision of the court of appeals and holds that an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general.

The wide acceptance by courts of alcohol breath tests in "drunk driving" cases is well-documented. This court so acknowledged, stating in *Westerville v. Cunningham* (1968), 15 Ohio St. 2d 121, 123 [44 O.O.2d 119], as follows: "* * * such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators."

In recent years, the courts have been aided by the enactment of statutes dealing with this matter. In Ohio, the General Assembly has legislatively provided for the admission of various alcohol determinative tests in R.C.

4511.19.[1] This section provided in pertinent part that "[i]n any criminal prosecution for a violation of this section * * * the court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's * * * breath * * * withdrawn within two hours of the time of such alleged violation. * * * Such bodily substance shall be analyzed in accordance with methods approved by the director of health, by an individual possessing a valid permit issued by the director of health pursuant to R.C. 3701.143 of the Revised Code."

R.C. 3701.143 authorizes the Director of Health to determine suitable methods for breath alcohol analysis. By virtue of Ohio Adm. Code 3701-53-02(B)(2) the intoxilyzer has been approved as one of several breath testing instruments.[2]

In *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 198-199 [55 O.O.2d 447], this court examined the nature of the presumption established by R.C. 4511.19:

"In * * * [providing that a defendant will be presumed to be under the influence of alcohol if there is a concentration of fifteen hundredths or above of one percent or more by weight in his blood], the General Assembly has expressed its conviction that the relationship between the objective determination by chemical test of the percentage of alcohol by weight in the blood (.15% or more), and its effect on people, is so well scientifically established that it need not be demonstrated by evidence, and may take the place of evidence at trial. The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in the blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol. * * * [Citations omitted.] When the test results are in evidence, the evidence that the presumption supplies is the correlation between a scientific fact, the results of the test, and human behavior; that is, that all persons who test .15% or more are under the influence of alcohol."

In *Myers,* the court recognized, at page 199, that this statutory presumption not only acts to supplant expert testimony as to test results, it also "* * * bears directly on an issue material to the case, *i.e.,* whether defendant was under the influence of alcohol. * * * The impact the presumption provides, given its real intendment, is that it tends to prove whether defendant was under the influence of alcohol."

It must be stressed that while R.C. 4511.19 creates the presumption that one is under the influence of alcohol if there is a specific concentration of alcohol by weight in one's blood, such presumption is rebuttable. As Pro-

[1] This section has since been revised.

[2] It is noted that there has been no assertion that there was an abuse of discretion by the Director of Health in promulgating these rules.

fessor McCormick states in his treatise on Evidence (2 Ed. Cleary Ed. 1972) 513, Section 209:

"It is important to remember that none of these tests is conclusive, that it is always open to the opponent to adduce countervailing evidence of *his* sobriety. Likewise, it is important to remember that the tests are not the sole evidence admissible on either side of the issue. Field sobriety tests, * * * sound motion pictures and videotape recordings, may all supplement the tests in producing a reliable judgment on the issue of intoxication." (Footnotes omitted.) (Emphasis added.)

In the instant case, the appellee does not dispute the fact that the General Assembly may delegate to the Director of Health the determination as to the mechanism which would be used for measuring blood alcohol content of an individual. Rather, the appellee disputes that he is bound by the director's determination that the intoxilyzer is generally a reliable, valid, breath testing instrument. The appellee argues that while the initial determination that a certain machine is qualified to analyze a person's breath may be proper, the ultimate issue of guilt or innocence of an accused is a judicial function: the rulemaking power of the Director of Health may never deprive a defendant of the right to present a defense to the charge. The appellee essentially asserts that if he is denied the opportunity to make a general attack upon that determination, he will be denied his constitutional right to present a defense and to have his guilt proved beyond a reasonable doubt.

Appellee has misconstrued the impact of the enactment of R.C. 4511.19 by the General Assembly. Professor McCormick, in addressing statutes similar to R.C. 4511.19, has explained as follows at pages 511 and 513:

"The subjects of standards of proof and testing are now largely controlled by statute[s] * * *. In the process, most of *the original questions as to the general reliability of the tests* and the relation between blood-alcohol levels and driver impairment *have been answered,* expressly or impliedly, by the legislatures."

"Under [such] * * * statutes, the questions of relevancy, and to a large extent of weight, of the evidence, *have thus been legislatively resolved.* The presumptions have been upheld by the courts * * * and the prescription for test procedures adopted by the state health agency has been taken as acceptance of the general reliability of such procedures in showing blood-alcohol content." (Footnotes omitted.) (Emphasis added.)

Appellee's position simply fails to afford the legislative determination that intoxilyzer tests are proper detective devices the respect it deserves. As McCormick so recognized, legislatures, by enacting statutes such as R.C. 4511.19, have legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests. And, as Judge Stephenson stated in *State* v. *Brockway* (1981), 2 Ohio App. 3d 227, 232:

"* * * [The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence

has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices."

Not only does appellee's position fail to give recognition to the legislative determination, it also misperceives the presumption and the effect of that presumption created by R.C. 4511.19. The presumption created by R.C. 4511.19 is that the accused was under the influence of alcohol. "The effect of the presumption is to eliminate the necessity of proof by the prosecution of the effect of alcohol on the individual when the level is within the range established by the presumption. The statute does not create an absolute presumption, but only a rebuttable one. * * * [The defendant may still,] notwithstanding the presumption, [establish if he can that] he was not under the influence of alcohol at the time of his arrest, or that there was something wrong with the test and the results were erroneous." Erwin, Defense of Drunk Driving Cases (3 Ed. 1971) 26-9, Section 26.03.

This presumption does not, contrary to appellee's arguments, change the presumption of innocence to one of guilt. It merely raises the rebuttable presumption that one was under the influence of alcohol. Under the statute, the accused may introduce any other competent evidence bearing upon the question of whether *he* was under the influence of intoxicating liquor. Rebuttable evidence may include non-technical evidence of sobriety, such as a videotape or testimony by the accused or by witnesses concerning the accused's sobriety and the amount of consumption, as well as technical evidence, such as additional chemical tests and the completion of field sobriety tests. There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. See, *e.g., Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79 [72 O.O.2d 44]. Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed. Accord *State* v. *Brockway, supra,* at 232. Since the presumption is rebuttable and the defendant may go forward with evidence, the "* * * [d]efendant cannot be heard to complain that the provisions of R.C 4511.19 eliminate his presumption of innocence or hamper the presentation of his defense." *State* v. *Myers, supra,* at 201.

The presumption created by the scientific test is thus to be considered by the jury and the court along with the other evidence as to whether or not the accused was intoxicated. Whether the presumption was overcome by the evidence presented is a question of fact for the jury. Even with the assistance of the presumption, the state must prove every element of the offense charged, including the element of intoxication beyond a reasonable doubt before the jury may convict. The prosecution must still lay the proper foundation for admission of the intoxilyzer test results. Proper jury instructions are essential and will ensure that the jury is aware of the rebuttable nature of the presumption created by R.C. 4511.19 and that the state must still prove guilt beyond a reasonable doubt.

For the above-stated reasons, this court holds that in light of R.C. 4511.19, an accused may not make a general attack upon the reliability and validity of the breath testing instrument, and thereby reverses the holding of the court of appeals.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, LOCHER and HOLMES, JJ., concur.

SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. The decision reached by the court today sanctions an unconstitutional exclusion of evidence from a criminal trial. Under the Constitutions of the state of Ohio and the United States all persons accused of crime have the right to present their own evidence including expert testimony. As I do not believe R.C. 4511.19 stands for the proposition that no expert testimony may be introduced to rebut the statutory presumption created, I dissent. There is no prohibition against the presentation of expert medical testimony by the accused to show the nonexistence of any nexus between the test results and the physical condition of the accused. See *State* v. *Myers* (1971), 26 Ohio St. 2d 190 [55 O.O.2d 447].

Even though the Director of Health has approved a specific test, and test machine, pursuant to the legislative authority granted under R.C. 4511.19 *et seq.,* the court may independently determine the reliability of the test procedure. The common-law criteria for the admissibility of evidence continue for the very reason that R.C. 4511.19 provides, "the court may admit evidence on the concentration of alcohol in the defendant's blood. * * *" Since the legislature has provided the presumption arising from the requisite blood alcohol content test to be rebuttable, no limitation should be placed on a defendant's right to offer evidence to rebut the test result. The rulemaking power of the Director of Health can never deprive a defendant of his constitutional right to present all relevant evidence in his defense to the crime with which he is charged.

The admissibility of relevant evidence is a judicial function. The Ohio Constitution has delegated the responsibility for the fashioning of evidentiary rules solely to the Ohio Supreme Court. Section 5(B), Article IV of the Constitution provides in part:

"(2) The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

It has been recently noted by the court in *Melling* v. *Stralka* (1984), 12 Ohio St. 3d 105, "* * * that the foregoing constitutional provisions grant plenary rulemaking authority to the Supreme Court, which authority is necessary for a uniform, effective governance of the practice of law in this state." This court in furtherance of the powers granted it by the Constitution

has enacted the Ohio Rules of Evidence. Pursuant to these rules the courts within this state must make rulings concerning the admissibility of evidence. In the present case, it is clear that while the legislature has created a presumption of reliability concerning the intoxilyzer tests, Evid. R. 401, 402, 702 and 703 mandate the admission of the testimony proffered by defendant's expert witness at trial.

The cases relied upon by the majority relate only to the use and admissibility of machine test results by the state. None of the cases holds a defendant may not make a general attack upon the machine used. In this case, the appellee wished to introduce testimony relating to the indicia of reliability of intoxilyzer Model 4011, the machine used to test his blood-alcohol content. Serious questions have arisen in the past concerning radio interference and its effects on older intoxilyzer models. It was proffered that Dr. Frajola was going to testify as to radio interference, particularly on Model 4011.

The heart of appellee's defense was the testimony of Dr. Frajola concerning the reliability of the intoxilyzer results. In *State* v. *Brockway* (1981), 2 Ohio App. 3d 227, the testimonies of both Dr. Frajola and Leonard J. Porter, of the Ohio Department of Health, were admitted concerning the reliability of intoxilyzer Model 4011.

The issue of relevancy or admissibility of evidence cannot be usurped by the legislature nor delegated by the legislature to the Director of Health. The constitutional principle of separation of powers among the branches of government demands this conclusion. It is the function of the judiciary to rule on the admissibility of relevant evidence. The exclusion of relevant expert testimony solely because of a legislative or administrative presumption is unconstitutional.

I would, therefore, affirm the judgment of the court of appeals.

SWEENEY and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.