OPINION
On December 20, 2000, appellant, Larry Birkhold, was operating a motor vehicle when he was involved in a two vehicle head-on collision. Ohio State Highway Patrol Trooper Randy Lewis arrived on the scene and conducted an investigation. As a result, appellant was indicted for aggravated vehicular assault in violation of R.C. 2903.08 and driving under the influence in violation of R.C. 4511.19.
Appellant filed several motions to suppress and/or exclude and/or dismiss. Hearings on the motions were held on June 12 and July 25, 2001. By judgment entry filed July 30, 2001, the trial court denied the motions.
On November 8, 2001, appellant pled no contest. By judgment entry filed November 9, 2001, the trial court found appellant guilty and sentenced him to a total aggregate term of one year in prison.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS AND/OR SUPPRESS OR EXCLUDE IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
 II. TRIAL COURT ERRED IN RULING THAT THE STATE MET ITS BURDEN OF SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS; AND THAT, AS THE TEST WAS PERFORMED ON APPELLANT, THAT THE TEST WAS SCIENTIFICALLY BASED TO PROVIDE AN ACCURATE AND RELIABLE TEST RESULT.
 III. APPELLANT WAS DENIED HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION BECAUSE THE OFFICER DID NOT HAVE PROBABLE CAUSE TO ARREST APPELLANT.
 I
Appellant claims his due process rights were violated when his motion to preserve specific evidence was disregarded by appellee, the State of Ohio. We disagree.
After his arrest, appellant was taken to the Buckeye Lake Police Department where he consented to a breath test. The first test produced an invalid sample. Twenty-three minutes later, appellant removed his dentures and submitted to a second test.
On January 25, 2001, appellant filed a motion to preserve evidence, including all video recordings, audio tape recordings and all "tape recordings of radio transmissions occurring in Licking County made by the Ohio State Highway Patrol and/or the Buckeye Lake Police Department from the time of contact with the Defendant until two (2) hours after said contact." The trial court granted said motion by order filed same date. Appellee never received the motion and order. As a result, the requested radio transmissions were unavailable to appellant.
Appellant claims the radio transmission tapes were necessary to his defense in order to determine whether there was radio traffic interference at the time of his breath test which was not detected by the BAC DataMaster's internal device.
In order for a defendant to receive a remedy for the destruction of evidence, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trumbetta (1984), 467 U.S. 479,489. This court has stated "the State's failure to preserve potentially useful evidence violates a defendant's due process rights only when the police or prosecution act in bad faith." State v. Hill (March 8, 1999), Stark App. No. 1998CA00083, unreported, citing State v. Lewis (1990),70 Ohio App.3d 624, 634. The burden is on appellant to prove the lost or destroyed evidence was exculpatory. Hill.
Appellant and the trial court do not challenge appellee's contention that the prosecutor assigned to the case had no knowledge of the motion and order nor any record of them in the office file. Vol. I T. at 8-10. Pursuant to the discovery request, appellee did provide appellant with the Licking County Sheriff's Office's radio transmission tapes for the evening in question as Buckeye Lake Police Department dispatching is done through the Sheriff's office. Id. at 9.[1] On these facts, there is no bad faith attributable to appellee.
The only missing radio transmissions would be from the Ohio State Highway Patrol. The records were erased according to procedure. Id. at 9. We note two officers, Randy Lewis and Charles Spurgeon, testified at the suppression hearings. Defense counsel never questioned them about radio transmissions during the breath test. Said officers could have had personal knowledge of any radio transmissions.
Based upon the failure to establish the existence of exculpatory evidence and the failure to show bad faith, we find the trial court did not err in denying appellant's motions on this issue.
Assignment of Error I is denied.
Assignments of Error II and III challenge the trial court's denial of appellant's motion to suppress. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are again the manifest weight of the evidence.State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623;Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 II
Appellant claims appellee failed to prove it substantially complied with the Ohio Department of Health Regulations. Specifically, appellant claims improper record retention pertaining to results of instrument checks and records of maintenance and repair of the BAC DataMaster machine. Also, appellant claims the proper procedures for retesting was not followed, and there was no proof the officer administering the test was a high school graduate. We disagree.
We note pursuant to State v. Vega (1984), 12 Ohio St.3d 185, an attack on the accuracy and credibility of breath test devices in general is prohibited. Therefore, there is no need to examine the reliability of the machine under a Daubert v. Merrell Dow Pharmaceutical (1993), 509 U.S. 579, standard.
The BAC DataMaster machine in question was calibrated on December 19, 2000 and was within tolerance. Appellant's test was on December 20, 2000. The December 26, 2000 calibration was also within tolerance.
 No Record of Aborted Tests
In support of this claim, appellant points out that multiple tests conducted on his wife the very same evening were aborted and no result tickets were printed nor were any results logged. The regulations of the Ohio Department of Health do not require the retention of records of aborted tests. Ohio Adm. Code 3701-53-01. Absent a specific rule on the issue, appellee has established substantial compliance.
 Missing Repair Record
In support of this claim, appellant points out that a repair record, specifically, the repair of the printer component on November 15, 2000, was not on file on February 28, 2001 and therefore appellee violated the three year retention regulation. The document was in the log book at the time of the hearing. Vol. II T. at 8, 25. Dean Ward, Bureau Chief for the Ohio Bureau of Alcohol and Drug Testing, testified he inspected the BAC DataMaster records at the Buckeye Lake Police Department on February 28, 2001 and did not find the November 15, 2000 record in the log book, however, he admitted he may have missed it. Vol. I T. at 126-127.
Given the contradictory testimony and the issue of credibility being within the sound discretion of the trial court, State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881, we cannot say the trial court erred in finding substantial compliance. The calibrations to the machine before and after appellant's tests were within tolerance so there is no showing of prejudice.
 Dentures
Appellant's first test was invalid, as the machine is designed to generate an invalid sample when mouth alcohol is detected. Vol. I T. at 62-63. As a result, Trooper Lewis waited twenty-three minutes and then asked appellant to remove his dentures before testing him again. Id. at 63-64. Appellant argues there should have been a second twenty minute wait after the removal of his dentures. Appellant bases his argument on the "twenty minute observation period to prevent oral intake of any material" requirement. Appellant's Brief at 20. Mr. Ward testified the removal of appellant's dentures was in compliance with regulations. Vol. I T. at 113. In addition, if the removal of appellant's dentures had resulted in the release of mouth alcohol as appellant argues could have happened, the machine would have generated a second invalid sample. We find no deviation from the standards. The removal of dentures is not synonymous to the ingestion of material into the system.
Further, the "potential effect of dentures in the test subject's mouth impacts the weight, not the admissibility, of the test results." Statev. McVey (December 28, 2000), Athens App. No. 00CA36, unreported; Statev. Arledge (December 6, 1991), Hocking App. No. 91CA8, unreported.
 Qualifications of Operator
Appellant claims Trooper Lewis was not qualified to administer the test because there was no direct evidence he was a high school graduate or had a G.E.D. Evidence was presented that established Trooper Lewis was a certified senior operator by the Ohio Department of Health. Vol. I T. at 59. The requirements to be a senior operator pursuant to Ohio Adm. Code3701-53-07(C) and (D) mandate that a senior operator be a high school graduate or have a G.E.D. A fortiori if Trooper Lewis had a senior operator certificate, he was a high school graduate or had a G.E.D.
 Radio Frequency
As we noted in Assignment of Error I, there is no dispute that the records of the Sheriff's office were made available to appellant and the Ohio State Highway Patrol records had been erased. We find no violation of the Ohio Department of Health regulations. Pursuant to our decision in said assignment of error, we find no error.
Based on the conclusions supra, we find substantial compliance with the Ohio Department of Health regulations.
Assignment of Error II is denied.
 III
Appellant claims the trial court erred in finding there was probable cause to arrest him. We disagree.
Probable cause to arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974),38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminals and location. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections 3.12-3.19.
Trooper Lewis testified that he was the first trooper on the scene. He observed appellant and talked to him to determine if he was injured because he was refusing treatment. Vol. I T. at 47. Trooper Lewis testified he observed the following:
 I had noticed a very strong odor of alcohol, alcoholic beverages on his person and in the squad. His eyes were bloodshot, glassy. His movements were slow. I asked him for his driver's license. He opened his wallet. He thumbed through it two or three times before he actually located his license, pulled it out, gave it to me. I asked him which vehicle he was operating. He told me. I asked him how much he had to drink that night, and he replied some.
 Id. at 47-48.
Trooper Lewis further opined that appellant was under the influence.Id. at 49. The EMT on the scene told Trooper Lewis "he had the impression that Mr. Birkhold had been drinking that evening." Id. at 50. On cross-examination, Trooper Lewis testified he reached his conclusion after observing the following:
 When I first contacted him, I definitely knew, you know, that there was — there was plenty of evidence there to support that he had been drinking. However, through his slurred speech, fumbling with his wallet to get his license, he was slow to answer questions, his glassy eyes and everything, that's the point where I formulated he was under the influence of alcohol and it is affecting him. The conversation goes to, you know, are you okay, which vehicle were you driving, where were you coming from, how much have you had to drink tonight.
 Id. at 74-75.
Sergeant Spurgeon, the on-scene supervisor, testified to his observation of appellant as follows:
 I noticed he was unsteady on his feet. At one point, I was in the back of the emergency squad where he was seated, and I could detect a strong odor of an alcoholic beverage about his person on his breath. His reactions were slow, his eyes were bloodshot. At different occasions when he was walking around the scene, I noticed he was unsteady on his feet.
 Id. at 98.
Sergeant Spurgeon also opined appellant was under the influence of alcohol. Id. at 99.
Probable cause to arrest can exist without the results of tests. Statev. Homan (2000), 89 Ohio St.3d 421. Appellant argues that all of these observations aside, the officers had not observed appellant operating the vehicle and at the point of arrest, they had made no conclusions as to the cause of the accident. Using the definition of probable cause citedsupra, the accident alone and the observations of three individuals, we find there was probable cause to arrest appellant for driving under the influence.
Assignment of Error III is denied.
The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By FARMER, J., HOFFMAN, P.J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.
[1] The prosecutor opined that appellee had complied with ninety percent of appellant's discovery request. Vol. I T. at 10.