[Cite as *State v. McCune*, 2013-Ohio-547.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0089** |
| CHRISTINA L. MCCUNE, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 2377.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*George G. Keith,* 135 Portage Trail, P.O. Box 374, Cuyahoga Falls, OH 44223 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Christina L. McCune's, Motion to Suppress. The issue to be decided in this case is whether a trial court, in the performance of its role as gatekeeper, may require the State to demonstrate the general scientific reliability of a breath testing instrument where the Ohio director of health has approved such instrument for determining the concentration

of alcohol in a person's breath. For the following reasons, we reverse and remand the decision of the court below.

{¶2} On February 24, 2012, McCune was issued a traffic ticket, charging her with Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d); and Failure to Control a Motor Vehicle, a minor misdemeanor, in violation of R.C. 4511.202.

{¶3} On April 12, 2012, McCune filed a Motion to Suppress, challenging the results of "physical performance or coordination tests," as well as "[a]ny other evidence obtained as a result of the Defendant's arrest for operating a motor vehicle under the influence of alcohol." It also noted that there was not probable cause to arrest McCune for OVI or to "form an opinion that [she] was under the influence of alcohol while operating a motor vehicle."

{¶4} On June 11, 2012, McCune filed a Motion in Limine, requesting that the court exclude the results of "any breath tests taken," since "the breath testing device currently in use has not been recognized by the Court" and "[t]he Court has not taken testimony where it can take a judicial notice of the machine's credibility."

{¶5} On July 24, 2012, a hearing was set for the Motion to Suppress. No transcript of such a hearing was filed in this matter. In a Journal Entry issued on the same date, the trial court granted McCune's Motion to Suppress, with respect to the results of the Intoxilyzer 8000.[1] The court noted that it had considered arguments of

---

1. Although the trial court stated that it was granting only the Motion to Suppress, it appears to have been addressing McCune's Motion in Limine, which specifically raised issues related to the admissibility of the breath test results.

2

counsel and "the prior case heard before this Court regarding the Intoxilyzer 8000," *State v. Johnson*, Portage Municipal Court Case No. R 2011 TRC 4090. In *Johnson*, the trial court held that the State was required to present evidence at a hearing for the court to determine the general scientific reliability and admissibility of the breath test results of the Intoxilyzer 8000. In the present matter, the court held that "the Defendant's breath test result shall not be admitted during the trial in this matter" and that "the violation of Ohio Revised Code 4511.19(A)(1)(d) is dismissed." The Entry also noted that "[t]he parties agreed to stay the remaining charges" pending the results of the State's appeal.

{¶6} A notation by the lower court judge on the file, dated July 24, 2012, states that the Motion to Suppress was withdrawn. The docket memorializes that, stating "Journal Entry: Motion to Suppress Withdrawn."

{¶7} The State timely appeals and raises the following assignment of error:[2]

{¶8} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶9} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

---

2. McCune did not file an appellee's brief.

3

{¶10} In its sole assignment of error, the State argues that, pursuant to the provisions of R.C. 3701.143 and Ohio Adm.Code 3701-53-02(A), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to determine the amount of alcohol in the breath. It further argues that, pursuant to *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), a defendant may not attack the general reliability of a breath testing instrument and the State is not required to present evidence to support a determination that the test is generally reliable.

{¶11} The Ohio General Assembly has charged the Ohio director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath[.]" R.C. 3701.143. The Intoxilyzer 8000 has been approved as an "evidential breath testing instrument" by the director of health. Ohio Adm.Code 3701-53-02(A)(3).

{¶12} This court has recently addressed the exact issue raised by the State regarding the general reliability of the Intoxilyzer 8000 and determined that, pursuant to *Vega*, a defendant may not make "a general attack upon the reliability and validity of the breath testing instrument," although breath test results are subject to challenge on a variety of grounds, including specific attacks on the reliability of the test and attacks on the performance of the test in a specific defendant's case. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 30-32; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 25 and 35; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 24 and 32.

4

**{¶13}** As was discussed in the foregoing cases, the lead Ohio Supreme Court case on this issue is *Vega*, in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." 12 Ohio St.3d at 186, 465 N.E.2d 1303. In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," since the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188, 190.

**{¶14}** Other appellate districts have consistently rejected the position that the State is required to provide evidence of the general reliability of a testing instrument in the same or similar situations. *State v. Klintworth*, 4th Dist. No. 10CA40, 2011-Ohio-3553, ¶ 12 ("this court will not allow the defendant to us[e] expert testimony to attack the general reliability or general accuracy of a legislatively determined test procedure - urine testing - as a valid scientific means of determining blood alcohol levels") (citation omitted); *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 27 (10th Dist.) ("while [*State v.*] *French*[, 72 Ohio St.3d 446, 650 N.E.2d 887 (1995),] permits evidentiary objections to the test results challenging issues such as competency, admissibility, relevancy, authenticity, and credibility, it does not indicate that a challenge to the 'general reliability' is among the permissible challenges"); *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 ("[the defendant's] *Daubert* challenge * * * is forestalled by the 'legislative mandate recognized in *Vega*'").

5

**{¶15}** While no general attack on reliability may be made, when duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *French*, at 451-452.

**{¶16}** In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

**{¶17}** We note that, in the present case, McCune did not raise in her Motion to Suppress any specific challenges to the Intoxilyzer 8000 test performed. Further, according to the record, her Motion to Suppress was withdrawn on the same date the trial court entered its judgment suppressing the breath test results. In order to rebut the *Vega* presumption, McCune was required to raise specific procedural and substantive challenges, but there is no indication that she did so.

6

{¶18} The sole assignment of error is with merit.

{¶19} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting McCune's Motion to Suppress, is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


TIMOTHY P. CANNON, P.J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶20} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶21} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

7

{¶22} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶23} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶24} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No.

8

WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶25} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶26} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

{¶27} However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

{¶28} The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the

9

results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶29} Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶30} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

{¶31} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the

10

case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶32} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson,* Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶33} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶34} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound

11

and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶35} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶36} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a

12

different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶37} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.